WYMAN AND JOHN G. FLINT AND GEORGE HART
*v.* WILLIAM H. JOHNSON AND GEORGE H.
BABBITT.

*Cross Cause:* WILLIAM H. JOHNSON AND GEORGE
H. BABBITT *v.* WYMAN AND J. G. FLINT
AND GEORGE HART.

[In Chancery.]

*Estoppel.　Silence.　Fraud.　Practice.　Mandate.　Contract,*
*Construction of,　Reformation of.*

1. When a contract has been reduced to writing, and one of the parties refuses to
sign it unless a certain construction stated by him should be put upon it, the
other party, who by his silence and conduct has induced him to sign it, will be
estopped from claiming a different construction; otherwise it would be a
fraud; especially where the parties acted on the theory that the construction
given when the contract was executed was right,—even in the conduct of the
trial below. Rowell, J., dissents, thinking that it did not appear that defend-
ants were misled by the silence of the orators.

2. In such case, if it were necessary, the court would order a reformation of the
contract.

3. A bill was brought to dissolve a partnership, and a master was appointed who
made a report; thereupon the defendants filed a cross-bill, and another report
was made by the same master. The case was heard in the Supreme Court and
a mandate agreed on; but on motion of the defendants in the original cause it
was withheld for 60 days for time to file further proceedings in the Court of
Chancery; accordingly an additional bill was filed, the decree was *pro forma*
reversed, and the cause remanded. The additional bill was answered, an
accounting ordered, a report made by a new master, and the case came up on
appeal; *Held,* that the mandate was not conclusive, and that the court was not
embarrassed by it in considering the case as presented by the last report.

Bill in Chancery. Heard on the pleadings and a special
master's report, September Term, 1885, Windham County,
Walker, Chancellor.

Ordered *pro forma* and without a hearing that the additional
bill be dismissed.

The 4th article of the agreement was:

"4th. The stipulated value of the said Johnson and Bab-
bitt's four-sixteenths of the property of said firm, not including

debts due said firm, is hereby understood and agreed to be four thousand five hundred dollars ($4,500). Said W. and J. G. Flint hereby agree to pay and assume for the said Johnson and Babbitt $4,500 of the indebtedness of said firm of Flints, Johnson & Co. It being hereby understood and agreed, that if the debts due from said firm shall exceed the debts due to it, that said William H. Johnson shall pay three-sixteenths of all such excess, and said George H. Babbitt one-sixteenth; and if said $4,500 shall be insufficient to pay their share of the debts of said firm, beyond the debts due it, then said Johnson and Babbitt shall pay or secure such deficiency in the proportion above stated."

The master found :

" Said contract, before being executed, was read over in the presence of both of the said Flints and said Johnson, and the question was then made as to whether or not the debts due the firm of Flints, Johnson & Co., whether collectible or uncollectible, or only the collectible debts were to be considered in determining the amount to be paid by Johnson and Babbitt to the Flints, for their share of the indebedness of the firm, and it was there stated, by said Johnson, that all the debts due the firm of Flints, Johnson & Co., whether collectible or uncollectible, were to be the basis in determinating the amount to be paid by Johnson and Babbitt to the Flints, for their share of the liabilities of the firm, and that he, Johnson, had declined to make the agreement on the basis of what the Flints might succeed in collecting of the debts due the firm of Flints, Johnson & Co.

" Thereupon it was suggested by Mr. Eddy, who was acting as attorney for Johnson & Babbitt, on that occasion, that the contract could be rendered absolutely certain on that point by the insertion of the words, ' whether due from solvent or in-solvent debtors,' in the fourth clause of said contract, after the word ' it ' and before the words ' that said William H. Johnson,' but the said Flints objected to said contract being altered in that particular from the original draft as made by Davenport, and after reading over that portion of the contract again the said Eddy remarked that he did not know as the addition of the words suggested by him would alter the true meaning of the contract as drawn by Davenport.

" I find that said contract was executed by said Johnson

and Babbitt upon the belief that the fourth clause in said agreement would include all the debts due the firm of Flints, Johnson & Co., whether collectible or uncollectible, or whether due from solvent or insolvent debtors, and the same would be included in ascertaining the amount said Johnson and Babbitt were to pay said Flints as their share of the indebtedness of the firm of Flints, Johnson & Co., and that they would not have executed said contract unless they had so believed.

"I further find that both of the said Flints knew and understood that the said Johnson and Babbitt had that understanding and belief, and that neither of the said Flints suggested or intimated that the contract as drawn and executed would bear any. other construction than the one Johnson and Babbitt supposed.

"I further find that all the parties to the contract knew the words of the contract fully, and that no other or different words were used in any portion of the contract than what each of the parties fully understood and assented to at the time; the mistake being not in the particular words used, but in not understanding the construction that might be placed on the words used.

"I further find that said Johnson and Babbitt did not know that said contract was claimed to be different from what they understood it until the time of the accounting in said case before the master under the cross-bill. At said accounting they then learned that the Flints claimed that in the fourth clause of the contract, in determining the amount Johnson and Babbitt were to pay the Flints, only the debts due the firm of Flints, Johnson & Co., which the Flints in the exercise of due diligence could have collected, were to be reckoned.

"Thereupon said contract was examined by the solicitor for said Johnson and Babbitt, and said Johnson and Babbitt were informed by him that their, said Johnson and Babbitt, construction of the contract was the true one. Relying upon that advice and opinion of their solicitor, they, Johnson and Babbitt, went along with the accounting before the master, and did not introduce before the master testimony which they might have done, tending to show that the Flints had not used due diligence in making collections of the debts due to the firm of Flints, Johnson & Co., inasmuch as that question was immaterial if their view and that of their solicitor of the true construction of the contract was the correct one."

Flint *v.* Babbitt.

*C. B. & C. F. Eddy* and *A. F. Walker*, for Johnson and Babbitt.

The sole question is this: What is the meaning of the words, " If the debts due from said firm shall exceed the debts due to it."

In our view of the case the true legal · principle to be applied is that of estoppel. And this can be properly appealed to under the issues as framed, and our general prayer for relief. *Montpelier & Wells River R. R. Co.* v. *Langdon*, 45 Vt. 137 ; *Stafford* v. *Ballou*, 18 Vt. 329 ; *Miller* v. *Bingham*, 29 Vt. 89.

" A man who has induced a course of conduct in another by his conduct or declarations must stand by them, whether true or false." *Soper* v. *Frank*, 47 Vt. 374.

The question to be decided is the true interpretation of the contract. There is no doubt about the literal reading of the words ; there is no reason why their clear meaning should be varied from. We claimed, on the former hearing, that this meaning was so plain that there was no room for construction. We still insist that there is no ambiguity to be explained away, while adding that there is no foundation in the facts of the case for any varied meaning.

" But where the language of an agreement is plain and unequivocal, there is no room for construction, and though the party have misapprehended it, or it may not express his real intent, yet it must be carried into effect according to its plain meaning." *Exton* v. *Lyon*, 3 Ves. 692 ; *Doe* v. *Laming* 2 Burr. 1108 ; *Benjamin* v. *McConnell*, 4 Gilm. 536 ; Anson Con. 120, 125, 234 ; Chit. Con. (10th Am. ed.) 77 ; *Robertson* v. *French*, 4 East, 130 ; 2 Par. Cont. 500, 549 ; 1 Greenl. Ev. 275 ; *Lowrey* v. *Adams*, 22 Vt. 165 ; *Wing* v. *Cooper*, 37 Vt. 178 ; *Bradley* v. *Bentley*, 8 Vt. 244.

*L. M. Reed* and *Waterman & Martin*, for the Flints.

Conceding the mistake as alleged in the bill, and all the circumstances as there alleged, the fact remains that the orators

had all the knowledge of the facts which they now possess, as early as the summer of 1881, and resting upon their claim as to the construction of the contract, carried the question to the Supreme Court.

"Help must be seasonably asked when the ground and occasion for it are seasonably known, or the court feel bound to decline application for it; and by no means will it accord it to relieve a party from the result of an experiment of his own, involving delay, vexation and expense to the other party." St. Johnsbury v. Bagley, 48 Vt. 75; Barker v. Belknap's Est. 27 Vt. 700; Beard v. Hubble, 9 Gill, 420; Morgan v. New Orleans, etc., R. R. Co. 2 Woods, 244; Ludington v. v. Bemick, 7 W. Va. 273; Tracy v. Hecker, 51 How. (N. Y.) 69.

The orators insisted that the contract at issue was their contract, and meant precisely what they agreed to at the time they signed it. They insisted upon this claim at their accounting before the master under the cross-bill, and saw fit to rely upon their construction of it, and so neglected to introduce evidence before the master which they now say they would have introduced had they been better informed as to how the court would construe it. The question as to its construction was then raised, and the claims of each party made known to the other.

The Flints refused to have the words "whether due from solvent or insolvent debtors" interlined at the time the contract was executed.

To the ordinary understanding this refusal would seem to be sufficient notice that the Flints did not understand the agreement to be as the proposed interlineation would make it, and as the orators now claim they understood it, but that they expressly refused to assent to such an agreement.

The "mistake" was the mistake of the orators alone, for which the defendants were in no way responsible.

"To justify a decree reforming the contract as prayed for by the orators, it is not enough to show the sense and inten-

tion of one of the parties. It must be shown incontrovertably that the sense and intention of the other party concurred in it. In other words, it must be proved that they both understood the contract as it is alleged it ought to have been, and in fact it was, but for the mistake." Kerr Fraud, 409, 422; *Lyman* v. *Utica Ins. Co.* 17 John. 373; *Nevins* v. *Dunlap*, 33 N. Y. 676; *Wemple* v. *Stewart*, 22 Barb. 154; *Ruffner* v. *McConnell*, 17 Ill. 212; *Gordere* v. *Downing*, 18 Ill. 492; *Bellows* v. *Stone*, 14 N. H. 175; *Thompson Scale Co.* v. *Osgood*, 26 Conn. 16; *Hearon* v. *Ins. Co.*, 20 Wall. 490.

"Though the court will rectify an instrument which fails through some mistake of the draughtsman, in point of law, to carry out the real agreement between the parties, it is not sufficient in order to create an equity for rectification that there has been a mistake in the legal construction or the legal consequences of an instrument." Kerr Frauds, 428; Leake on Contracts, 169; *Hunt* v. *Rousmaniere*, 1 Pet. 1; *McDaniels* v. *Bank of Rutland*, 29 Vt. 230.

No fraud can be imputed to a party to a contract who merely keeps silent when all the facts and circumstances are equally within the knowledge of both parties, or may by the exercise of reasonable diligence be ascertained. Kerr Fraud, 95, 414; *Judd* v. *Blake*, 14 Vt. 410; Story Eq. s. 207.

A court of equity will not interfere where the instrument reads as the parties designed to have it. *McElderry* v. *Shipley*, 3 Md. 25; *Leavitt* v. *Palmer*, 3 N. Y. 19; *Stoddard* v. *Hart*, 23 N. Y. 556; *Gardner* v. *Bird*, 57 Barb. 277; *Barnes v. Bartlet*, 47 Ind. 98; *Smither* v. *Calvert*, 44 Ind. 242.

The opinion of the court was delivered by

ROYCE, C. J. The original bill was brought to procure the dissolution of a copartnership that then subsisted between the parties to the suit, for the appointment of a receiver, and for the taking an account of what was due said firm from each member thereof, and what was due to each mem-

ber of said firm, and for an injunction against the defendant Johnson.

After the defendant Johnson's answer had been filed, and while the cause was pending, on the first day of July, 1878, the orators Wyman Flint and John G. Flint, and the defendants, Johnson and Babbitt, entered into an agreement under seal, by which the copartnership was dissolved, and Johnson and Babbitt, for the consideration therein specified, conveyed all their interest in the property of the copartnership to the Flints. After said agreement had been made, an accounting was ordered and had under the original bill, and the master made a report, which was filed November 15th, 1880. On the 2d day of February, 1881, and before any action had been taken on the report, the defendants Johnson and Babbitt brought a cross-bill against the orators, which was answered, and an accounting was taken under it, and the master's report was filed at the September Term, 1881.

The case came on for hearing on the original bill and answer, and the master's report therein, and the cross-bill and answer and the master's report therein, and a pro forma decree was ordered for the defendants, and an appeal was allowed to the orators. At the General Term in 1882 the cause was heard, the pro forma decree of the Court of Chancery was reversed, and cause remanded with mandate that the original bill be dismissed without costs, and that a decree be entered in the cross-bill that W. and J. G. Flint hold the uncollected debts due the firm in trust for the several partners in proportion to their respective interests in the partnership, and that there is due on the accounting to W. and J. G. Flint from George H. Babbitt 1,271.69 dollars ; from George Hart 5,628.56 dollars ; and from them to Wm. H. Johnson 2,272.28 dollars, with interest on said sums from June 1st, 1878, and that the orators in the cross-bill recover costs. But on motion of the defendants the decision was withheld for sixty days for time to file in the Court of Chancery further proceedings. Such proceedings were filed, and the decree was then reversed pro forma, and

cause remanded for further proceedings in the Court of Chancery, agreeably to the orders that had been and might be made by that court. The further proceeding which the defendants were permitted to file consisted of an additional bill of complaint against the orators in the original bill. The additional bill was answered, and another accounting was ordered and had, and the report of the master filed, and at the September Term, 1885, it was ordered *pro forma* that the additional bill of complaint be dismissed; and the cause comes here upon an appeal taken by Johnson and Babbitt from that order.

I have regarded it as proper to be thus explicit in stating what has been done as explanatory of the anomalous manner in which the matters for adjudication have been brought here.

The equitable rights of the parties are dependent upon the contract entered into by them on the first day of June, 1878, as expressed in the written contract, or as it should have been expressed. The orators claim that the construction given to said writing by the mandate before recited is conclusive, and that the rights of the parties are to be determined by the construction therein given.

We do not so regard it. What was said by the mandate was but the expression of the opinion of the court upon the case as it was then presented, and how it must be ultimately determined, if no supervenient facts should be brought on to the record. That it was not intended to be absolute and conclusive is obvious from the fact that leave was granted to file further proceedings, and the decree reversed and cause remanded to the Court of Chancery, to be proceeded with under the orders of that court. So that the mandate is no obstacle to a full consideration of the case as it is now presented.

The fourth article of said written agreement, and which is the only part of it that need be recited, provided that the stipulated value of Johnson and Babbitt's four-sixteenths of the property of the firm, "not including debts due the firm," was understood and agreed to be 4,500 dollars, and the Flints agreed to pay and assume for Johnson and Babbitt 4,500 dol-

lars of the indebtedness of the firm ; and it was agreed and understood that if the debts due from the firm should exceed the debts due to it, Johnson should ·pay three-sixteenths of such excess, and Babbitt one-sixteenth ; and if the 4,500 dollars should be insufficient to pay their share of the debts of said firm beyond the debts due to it, then Johnson and Babbitt should pay or secure such deficiency in the proportion stated.

The principal contention has been as to whether the Flints, under that contract, should account for all the debts that appeared to be due to the firm, or only such as were collectible. The construction of the contract does not appear to have been an issue before the master in taking the account under the original bill, and no ruling was made upon it.    That accounting was confined to the ascertainment of the amounts due the respective partners from the firm.    The accounting had, under the cross-bill, took a wider range ; and in that accounting the master found and reported that the debts due from the firm, including the amounts due to the several partners, as set forth in his report under the original bill, amounted on the 1st day of June, 1878, to 56,338.61 dollars, and that the whole amount of debts due to the firm was on that date 39;400.49 dollars ; that of that amount only 15,824.37 dollars was good and collectible on said 1st day of June ; leaving of said debts that were not good and collectible 23,576.12 dollars.    Johnson and Babbitt claimed on that hearing that in ascertaining their liabilities to make up their proportions of the deficiency of assets to pay the firm debts, the whole amount of the debts due the firm should be credited, and that the contract required ·that construction.    And the Flints claimed that the contract only required them to credit the amount of said debts that were collectible.    The master found and reported the amounts that would be required under both constructions of the contract, and referred the question as to how it should be construed to the court.

It does not appear that an investigation was then made of the facts attending the execution of the contract, except as to

the interlineation of the words not including debts due said firm, and the addition of the last clause; or as to how the parties then understood it.

The decree that was appealed from was based upon that report; and the court had nothing to aid them in making the mandate but the contract made on the 1st of July, .1878, and the report of the master.

The master appointed to hear and report the facts under the additional bill of complaint has found that before the contract was executed, it was read over in the presence of the Flints and Johnson, and that the question was then made as to whether or not the debts due the firm, whether collectible or uncollectible, were to be considered in determining the amount to be paid by Johnson and Babbitt for their share of the indebtedness of the firm; and that Johnson had declined to make the agreement on the basis of what the Flints might succeed in collecting of the debts due the firm; that the contract was executed by Johnson and Babbitt in the belief that the fourth clause in the agreement would include. all the debts due the firm, collectible and uncollectible; and they were to be included in ascertaining the amount they were to pay of the indebtedness of the firm, and that they would not have executed it unless they had so believed; that the Flints knew and understood that Johnson and Babbitt had that understanding and belief, and neither of them suggested or intimated that the contract would bear any other construction than the one they supposed; that relying upon the advice of counsel that their construction was right, they allowed the accounting to proceed without introducing testimony bearing upon the question of the diligence used by the Flints in collecting debts due the firm, which they would have done if they had not so believed.

It is evident from the facts so found that the contract, if it is construed as the Flints claim, does not express the contract and agreement as understood by Johnson and Babbitt at the time of its execution, and as the Flints knew they understood it.

To allow a different construction to be put upon the contract by the Flints for their benefit than the one that they by their silence induced Johnson and Babbitt to believe would be put upon it, would operate as a fraud upon Johnson and Babbitt; and a court of equity will not aid the accomplishment of such a purpose, but will estop the Flints from claiming any other construction of the agreement than the one they, by their conduct, allowed Johnson and Babbitt to understand would be put upon it at the time it was exected. The facts found would justify the court in ordering a reformation of the contract; but inasmuch as we are not embarrassed by the mandate heretofore made, and the case is presented as it would have been if the contract had been reformed, there is no necessity for such an order; and we see no obstacle to a final disposition of the case under the familiar principle of equity that compels parties to abide by and perform the agreements that they have entered into.

It was found in the first accounting that there was due from the firm to Johnson on the 14th day of September, 1878, $7,473.67, and to Babbitt $135.43; and in the accounting under the cross-bill the debts of the firm, as before stated, were found to be $56,338.61, and the debts due to the firm $39,400.49, leaving a deficiency of assets with which to pay the debts of $16,938.12.

And it was agreed, by article four of the contract, that if the $4,500, which was the agreed value of the interest of Johnson and Babbitt in the firm property conveyed by them to the Flints, should be insufficient to pay their proportions of the firm debts, that they would contribute to their payment in the following proportions: Johnson should pay three-sixteenths and Babitt one-sixteenth. The four-sixteenths of the debt which Johnson and Babbitt were under obligation to pay amounted to $4,234.52, and they paid, by the conveyance of their interest in the firm property to the Flints $4,500, which exceeded the amount they were under obligation to pay to liquidate the debts of the firm, thus leaving them to stand as

creditors for the amounts found due them, and a decree should be entered that the original bill be dismissed without costs, and that Wyman and John G. Flint pay to George H. Babbitt the sum of $135.45, and interest on the same since the 14th day of September, 1880, and to William H. Johnson the sum of $7,345.11, the sum due after deducting $129.66, which should have been charged to him as found, by the report under the cross-bill, and interest on the same since the 14th of September, 1880, and for Johnson and Babbitt to recover their costs.

George Hart, one of the co-partners, was made a defendant to the cross-bill; and it was alleged in the cross-bill that the Flints had purchased of Hart all his interest in the property of the firm, and as a part of the consideration therefor had agreed with Hart to pay his share of the liabilities of the firm, and that allegation was admitted in the answer filed by the Flints.

No decree then should be passed charging Hart with the payment of any portion of the claims of Johnson and Babbitt; and no facts are found that would justify a decree in favor of the Flints against Hart.

The decree of the Court of Chancery is reversed and cause remanded with mandate in accordance with the views hereinbefore expressed.

Rowell, J. I respectfully dissent from the ground on which the case is put. Not undertaking to say whether this is a subject-matter concerning which an estoppel by silence is predicable, and with all due deference to the statement in the opinion to the contrary, I think it does *not* appear that Johnson and Babbitt, or either of them, relied upon the silence of the Flints, or were at all influenced or misled thereby, without which I do not see how there can be an estoppel.

But the court having held, as it does, that " the mandate is no obstacle to a full consideration of the case as it is now presented," I think the judgment can be upheld on the ground that the construction of the contract is as Johnson and Babbitt claim it.